UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

AUTUMN BOOK,

     Plaintiff,                    Case No. 2:20-cv-13027

v.                                Magistrate Judge Kimberly G. Altman

COMMISSIONER OF SOCIAL
SECURITY,

     Defendant.

_____/

## MEMORANDUM AND ORDER
## ON CROSS MOTIONS FOR SUMMARY JUDGMENT

### I.     Introduction

This is a social security case.  Plaintiff Autumn Book ("Book") brings this action under 42 U.S.C. § 405(g), challenging the final decision of Defendant Commissioner of Social Security ("Commissioner") denying her application for Disability Insurance Benefits (DIB) under the Social Security Act (the Act).  Both parties have filed motions for summary judgment (ECF Nos. 15, 16), which have been referred which has been referred for consent jurisdiction under 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73.  (ECF No. 5).

For the reasons set forth below, the Commissioner's motion (ECF No. 16) is GRANTED, Book's motion (ECF No. 15) is DENIED, and the Commissioner's decision is AFFIRMED.

## II.    Background

### A.    Procedural History

Book was 39 years old at the time of the March 2, 2018 alleged onset date. (ECF No. 13, PageID.254).  She completed four years of college and worked previously as a behavioral consultant and substitute teacher.  (*Id*., PageID.280). She alleges disability due blindness resulting from optic neuritis,[1] multiple sclerosis (MS), depression, arthritis of the hips and knees, allergies, interstitial cystitis,[2] tendonitis of the Achilles tendon, chronic fatigue, and cervical disc herniation.  (*Id*., PageID.279).

---

[1] "Optic neuritis is a condition that affects the eye and . . . vision.  It occurs when your optic nerve is inflamed."  https://www.hopkinsmedicine.org /health/conditions-and-diseases/optic-neuritis. (Last visited April 21, 2022). "When the optic nerve is irritated and inflamed, it doesn't carry messages to the brain as well, and you can't see clearly." *Id.*

[2] "Interstitial cystitis [] is a chronic condition causing bladder pressure, bladder pain and sometimes pelvic pain.  The pain ranges from mild discomfort to severe pain."  https://www.mayoclinic.org/diseases-conditions/interstitial-cystitis/symptoms-causes/syc-20354357. (Last visited April 21, 2022).  The condition can be treated with NSAIDs, antihistamines, and prescription medication.  https://www.mayoclinic.org/diseases-conditions/interstitial-cystitis/diagnosis-treatment/drc-20354362. (Last visited April 21, 2022).

After Book's August 17, 2018 DIB application was denied at the initial level on November 1, 2018, she timely requested an administrative hearing, held on October 24, 2019, before Administrative Law Judge ("ALJ") Mikel Lupisella. (*Id.*, PageID.108, 127).  Book, represented by counsel, testified, as did a Vocational Expert ("VE").  (*Id.*, PageID.114, 133).

Book offered the following testimony at the hearing:

She held a driver's license but was limited to driving short distances due to fatigue and leg spasms.  (*Id.*, PageID.118).  She lived with her husband and two children in a one-story house.  (*Id.*, PageID.118-119).  She relied on family members to perform laundry chores.  (*Id.*, PageID.119).  She received food stamps. (*Id.*).  A two-day work attempt made after the alleged onset of disability date was unsuccessful.  (*Id.*, PageID.120).

Book explained that she was unable to work due to fatigue and her inability to stand or sit for more than 10 minutes at a time due to lower extremity (primarily right-sided) pain.  (*Id.*, PageID.121-122).  She was unable to walk more than "four to six car lengths."  (*Id.*, PageID.123).  She was unable to lift more than a gallon of milk.  (*Id.*, PageID.123).  She used a single-prong cane for walking.  (*Id.*).  She currently took Methadone, a muscle relaxer, and Buspar for anxiety.  (*Id.*, PageID.121).  Book experienced right ankle pain since 2017 and underwent

surgery to repair the Achilles tendon earlier in the year.  (*Id*., PageID.124).  She required but had not yet undergone left ankle surgery.  (*Id*.).

Book experienced reduced psychological symptoms while taking psychotropic medication.  (*Id*., PageID.121-122).  The muscle relaxers caused dry mouth and mild sleepiness.  (*Id*., PageID.122).  She took a nap every morning after helping her son get ready for school.  (*Id*., PageID.124).  She took a second nap before her son came home from school and was "back to bed" by 6:00 p.m.  (*Id*., PageID.125).  She was able to cook for her family before retiring for the night.  (*Id*.).  She experienced difficulty recalling words and staying awake.  (*Id*.).

Book left the house only to attend doctors' appointments.  (*Id*., PageID.126).  She grocery shopped only when her children were available to help her or if the trip was limited to purchasing two items or less.  (*Id*.).  She was able to push a grocery cart.  (*Id*.).  She experienced "bad" days around seven times a month, where she was unable to get out of bed all day.  (*Id*.).

In response to questioning by her attorney, Book testified that she had "bladder issues" requiring hourly bathroom visits.  (*Id*., PageID.127).  She also experienced light sensitivity requiring sunglasses in brightly lighted spaces to avoid headaches.  (*Id*.).  Her daily naps were interrupted by the need to change positions due to hip pain.  (*Id*., PageID.128).  She experienced nighttime sleep disturbances due to the need to use the bathroom or because of hip pain.  (*Id*.,

PageID.129).  She had fallen five or six times in the past six months due to balance problems.  (*Id*.).  She did not grocery shop more than once a month.  (*Id*., PageID.130).  She held Master's degrees in Special Education and Healthcare Administration.  (*Id*.).   Due to fatigue and cognitive problems, she would be unable to resume any of her former work.  (*Id*., PageID.132).  The Achilles tendon surgery had not relieved her lower extremity pain.  (*Id*.).

On November 19, 2019, the ALJ found that Book not disabled.  (*Id*., PageID.91-102).  On September 10, 2020, the Appeals Council denied review of the ALJ's determination, finding that evidence submitted subsequent to the ALJ's determination did not show "a reasonable probability" of changing the determination.  (*Id*., PageID.48-49).  Book timely filed a claim for judicial review of the final decision on November 12, 2020.

### B.    Medical Evidence

July 2017 records by AuSable Eye Care show right eye vision of 20/25 and left, 20/25-1 with correction.  (*Id*., PageID.369).  Both eyes showed a clear range of motion.  (*Id*., PageID.370).  The same month, Book reported that she had stopped taking MS medication "due to cost and worry that employer will find out she has MS and fire her."  (*Id*., PageID.438).  She reported working 50 hours each week.  (*Id*.).  October 2017 MRIs of the brain and cervical spine showed "no new lesions."  (*Id*., PageID.385).  January 2018 records state that Book continued to

work 50 hours a week.  (*Id.*, PageID.458).  March 2018 treatment records by MHCG Grayling Community Health Center note Book's report of a urinary tract infection.  (*Id.*, PageID.649).  Records note a history of interstitial cystitis.  (*Id.*).  Records from the following week note that symptoms had resolved.  (*Id.*, PageID.653).  She reported fatigue and depression but denied anxiety.  (*Id.*, PageID.654).  She demonstrated a normal mood and affect.  (*Id.*, PageID.655).  University of Michigan Hospital records from the same month note a "narrow based" gait.  (*Id.*, PageID.355).  Matthew Ebright, M.D. noted that the condition of optic neuritis was "not clearly active."  (*Id.*, PageID.356).  Book described her work environment as "terrible."  (*Id.*, PageID.357).

May 2018 records by MHCG Grayling note Book's report of fatigue two weeks after beginning a new medication regimen.  (*Id.*, PageID.661).  July 2018 records note continued light sensitivity, dryness, and pain with reading.  (*Id.*, PageID.674).  She was diagnosed with depression based on a self-assessment but appeared fully oriented with a normal mood and affect.  (*Id.*, PageID.675, 678).  An eye examination from the following month showed corrected vision of 20/20 in both eyes.  (*Id.*, PageID.372).  The records state a history of optic neuritis.  (*Id.*, PageID.375).

In October 2018, Book reported anxiety after a friend reported her to child protective services, but otherwise had reduced psychological symptoms.  (*Id.*,

PageID.691).  Records from later the same month note only mild anxiety but moderate depression based of self-reports.  (*Id*., PageID.699).  Her behavior was deemed appropriate with full orientation.  (*Id*., PageID.703).

Later in October 2018, Judy Strait, Psy.D. performed a non-examining review of Book's treating and consultative medical records on behalf of the SSA. She found mild limitation in the ability to understand, remember, or apply information; interact with others; and adaptation and moderate limitation in the ability concentrate, persist, or maintain pace.  (*Id*., PageID.160-161).

 In November 2018, Stephen Morgan, D.O. performed an assessment of the records pertaining to Book's physical conditions on behalf of the SSA.  He concluded that Book could lift 20 pounds occasionally and 10 frequently; sit for six hours and stand/walk for four in an eight-hour workday; and push and pull without limitation.  (*Id*., PageID.162).  Book was precluded from the use of ladders, ramps, and scaffolds; limited to frequent walking of stairs/ramps and stooping; and limited to otherwise occasional postural activity.  (*Id*., PageID.162-163).  Dr. Morgan found limited right-sided near and far acuity, depth perception, accommodation, and field of vision.  (*Id*., PageID.163).  He further found that Book should avoid even moderate exposure to wetness, vibration, and hazards such as machinery and heights.  (*Id*., PageID.163).

Treating records by MHCG Grayling from the same month (November 2018) note an improvement in symptoms with moderate psychological symptomology.  (*Id*., PageID.745).

In December 2018, treating neurologist Jeanie Cote, M.D. completed a Multiple Sclerosis Medical Source Statement, noting that the diagnosis of MS had been confirmed by MRI.  (*Id*., PageID.622).  She noted that Book's symptoms included chronic fatigue, balance problems, paresthesia, depression, memory problems, sensitivity to heat, cerebellar ataxia, emotional lability, and numbness. (*Id*.).  She denied that Book had motor function problems and declined to state whether Book experienced muscle weakness.  (*Id*., PageID.622-623).  She denied exacerbations of MS in the past year.  (*Id*., PageID.623).  She found that Book required a job that permitted changing positions at will and would allow unscheduled work breaks for five minutes every hour.  (*Id*.).  She declined to find that Book required an assistive device.  (*Id*., PageID.624).  She limited Book to lifting less than 10 pounds on only rare occasions and rare twisting, stooping, or crouching.  (*Id*.).  She found that "emotional factors" contributed to Book's symptoms.  (*Id*., PageID.625).  She found that Book should avoid cold weather and icy walking surfaces.  (*Id*.).

In February 2019, Book underwent a right Achilles tendon repair.  (*Id*., PageID.786).  March 2019 psychological treating records state that Book was

pursuing a disability claim because "she believes she'll never be able to work again." (*Id*., PageID.725).

Psychological treatment records from the next month (March 2019) state that Book "refuses to believe in there being any hope her ability to change for her in the future." (*Id*., PageID.732).

Treating records by Mini Singh, M.D. of University of Michigan Hospital from the April 2019 state that Book was "alert and conversant . . . with good comprehension." (*Id*., PageID.759). Book demonstrated a "slow and antalgic gait." (*Id*.). The condition of MS was deemed stable. (*Id*.). May 2019 records state that Book was happy with the outcome of the Achilles tendon repair but reported calf pain while walking. (*Id*., PageID.770). Physical therapy discharge records from the same month show that therapy goals were partially met. (*Id*., PageID.800).

### III.    Framework for Disability Determinations (the Five Steps)

Under the Act, DIB is available only for those who have a "disability." *See Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007). The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a

continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  The

Commissioner's regulations provide that a disability is to be determined through

the application of a five-step sequential analysis:

> Step One: If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.

> Step Two: If the claimant does not have a severe impairment or combination of impairments that "significantly limits . . . physical or mental ability to do basic work activities," benefits are denied without further analysis.

> Step Three: If the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled regardless of age, education, or work experience.

> Step Four: If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.

> Step Five: Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy that the claimant can perform, in view of his or her age, education, and work experience, benefits are denied.

*Carpenter v. Comm'r of Soc. Sec.*, No. 08-10279, 2008 WL 4793424, at *4 (E.D.

Mich. Oct. 31, 2008), citing 20 C.F.R. § 416.920; *see also Heston v. Comm'r of

Soc. Sec.*, 245 F.3d 528, 534 (6th Cir. 2001); 20 C.F.R. § 404.1520.  "The burden

of proof is on the claimant throughout the first four steps. . . .  If the analysis

reaches the fifth step without a finding that claimant is not disabled, the burden

transfers to the [Commissioner]." *Preslar v. Sec'y of Health & Human Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994).

Following the sequential analysis set forth above, the ALJ found that Book was not disabled under the Act.[3]  At Step One, the ALJ found that Book had not engaged in substantial gainful activity since the alleged onset date of March 2, 2018 through the date of the decision.  (*Id.*, PageID.94).  At Step Two, the ALJ found that Book had the severe impairments of "degenerative disc disease, obesity, osteoarthritis of the knees, Achilles tendinitis of the right foot – status-post operation, migraine headaches, relapsing-remitting multiple sclerosis, major depressive disorder, anxiety, and post-traumatic stress disorder."  (*Id.*, PageID.94). He found that the conditions of right optic/retrobulbar neuritis and a bladder condition non-severe.  (*Id.*).  At Step Three, the ALJ found that Book's impairments, whether considered alone or in combination, did not meet or medically equal a listed impairment.  (*Id.*).

The ALJ then assessed Book's RFC, concluding that she was capable of performing exertionally light work with the following additional limitations:

> [S]he can only stand and/or walk for a total of 4 hours in an 8-hour workday.  She cannot climb ladders, ropes, or scaffolds.  She can occasionally climb ramps and stairs.  She can occasionally balance on

---

[3] The ALJ also found that he was not bound by a prior, December 7, 2010 non-disability determination (*Id.*, PageID.151) because there had since "been a change in regulations and/or rulings affecting those findings."  (*Id.*, PageID.91) (citing SSRs 16-3p, 17-2p).

narrow, slippery, or erratically moving surfaces.  She can occasionally stoop, kneel, crouch, and crawl; is limited to work environments where objects do not enter from either side, i.e. such as on an assembly line. She can have no exposure to wetness.  She can have no exposure to vibration, such as vibratory tools or machinery.  She is limited to work environments where the noise intensity level does not exceed "moderate" as that term is defined in the *Selected Characteristics of Occupations*.  She can have no exposure to hazards, such as unprotected heights or dangerous, moving machinery.  She is limited to simple and routine tasks performed in a work environment free of fast-paced production requirements (i.e. no work on an assembly line).  She is limited to low stress work, which is defined as involving only simple, work- related decisions and routine work place changes.  She is limited to occasional transactional interaction with the public, i.e. sales, negotiation, customer service, or resolution of disputes.

(*Id.*, PageID.96).

At Step Four, the ALJ found that Book was unable to perform her past relevant work.  (*Id.*, PageID.100).  At Step Five, the ALJ cited the VE's hearing testimony in support of the Step Five finding that Book could perform the unskilled, light work of a garment sorter (55,000 positions in the national economy); mail clerk (51,000); and router (53,000) as well as the unskilled, sedentary jobs of addressing clerk (50,000); bench inspector (56,000); and bench final assembler (54,000).  (*Id.*, PageID.101-102, 135-136).

## IV.    Standard of Review

The District Court has jurisdiction to review the Commissioner's final administrative decision under 42 U.S.C. § 405(g).  Although the court can examine

12

portions of the record that were not evaluated by the ALJ, *Walker v. Sec. of Health & Hum. Servs.*, 884 F.2d 241, 245 (6th Cir. 1989), its role is a limited one.  Judicial review is constrained to deciding whether the ALJ applied the proper legal standards in making his or her decision, and whether the record contains substantial evidence supporting that decision.  *Tucker v. Comm'r of Soc. Sec.*, 775 F. App'x 220, 224–25 (6th Cir. 2019)); *see also Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007) (noting that courts should not retry the case, resolve conflicts of evidence, or make credibility determinations); *Biestek v. Comm'r of Soc. Sec.*, 880 F.3d 778, 783 (6th Cir. 2017) (same).

An ALJ's factual findings must be supported by "substantial evidence."  42 U.S.C. § 405(g).  The Supreme Court has recently explained what that term means:

> Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains sufficient evidence to support the agency's factual determinations.  And whatever the meaning of substantial in other contexts, the threshold for such evidentiary sufficiency is not high.  Substantial evidence, this Court has said, is more than a mere scintilla.  It means—and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.

*Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (internal quotations omitted).

In making "substantial evidence" the relevant standard, the law preserves the judiciary's ability to review decisions by administrative agencies, but it does not grant courts the right to review the evidence de novo.  *Moruzzi v. Comm'r of Soc.*

*Sec.*, 759 F. App'x 396, 402 (6th Cir. 2018) ("The substantial-evidence standard . . . presupposes that there is a zone of choice within which the decisionmakers can go either way, without interference by the courts.") (quoting *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009)).  An ALJ's factual findings are therefore subject to multi-tiered review, but those findings are conclusive unless the record lacks sufficient evidence to support them.  *Biestek*, 139 S. Ct. at 1154.

Although the substantial evidence standard is deferential, it is not trivial. The Court must " 'take into account whatever in the record fairly detracts from [the] weight' " of the Commissioner's decision.  *TNS, Inc. v. NLRB*, 296 F.3d 384, 395 (6th Cir. 2002) (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487 (1951)).  Nevertheless, "if substantial evidence supports the ALJ's decision, this Court defers to that finding even if there is substantial evidence in the record that would have supported an opposite conclusion."  *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (internal quotations omitted).  Finally, even if the ALJ's decision meets the substantial evidence standard, "a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right."  *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009) (internal quotations omitted).

V.    Analysis

A.     The Opinion Evidence

Book first argues that the ALJ erred by finding treating physician Dr. Cote's December 2018 assessment "not persuasive" and instead, finding the assessments by non-examining source Dr. Morgan "partially persuasive."  (ECF No. 15, PageID.831) citing (ECF No. 13, PageID.98-99, 622-625).  Book also contends that Dr. Morgan's assessment, performed in November 2018, did not have benefit of the evidence created from that time forward.  (*Id.*) (citing *Miller v. Comm'r Soc. Sec.*, 811 F.3d 825, 834 (6th Cir. 2016)).

The Commissioner notes that Book's argument that Dr. Cote's opinion was entitled to presumptively controlling weight is based on outdated, now inapplicable regulations and that the ALJ's partial reliance on Dr. Morgan's physical assessment, based on the current regulations, is adequately explained and supported.  (ECF No. 16, PageID.843-844, 848-849).  The Commissioner contends that substantial evidence supports the finding that Book could perform exertionally light work.  (*Id.*, PageID.843).

In reply, Book appears to concede that Dr. Cote's opinion was not entitled to presumptively controlling weight but argues that under the current standard for evaluating opinion evidence, the ALJ's analysis nonetheless falls short.  (ECF No. 17, PageID.863-867).

The Commissioner is correct that Book's original argument that Dr. Cote's treating opinion is entitled to controlling weight is based on now-inapplicable regulations.  For claims filed before March 27, 2017, the opinion of a treating, acceptable medical source such as Dr. Cote is accorded controlling weight if "well-supported by medically acceptable clinical and laboratory diagnostic techniques," and "not inconsistent with the other substantial evidence."  *See Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004); 20 C.F.R. §§ 404.1527(c)(2); SSR 96–2p, 1996 WL 374188, at *5 (1996).

Because Book did not file an application for benefits until August 2018, the rule according presumptively controlling weight to an acceptable treating source does not apply.  In contrast to the earlier claims where § 404.1527 applied, for claims made on or after March 27, 2017, the ALJ will weigh both treating and non-treating medical evaluations based on how well they are supported by the remainder of the record.  20 C.F.R. § 404.1520c ("We will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from your medical sources").  The factors to be considered in evaluating medical opinions include supportability and consistency with the record as a whole; relationship with the claimant; length of the treatment relationship; frequency of examinations; purpose and extent of the treating relationship; whether the source has examined

the claimant; specialization; and any other factors that support or undermine the medical opinion. § 404.1520c(c). ALJs must articulate the "most important factors of supportability and consistency" of the medical opinions but "are not required to [] explain" the consideration given to the remaining factors. § 404.1520c(b).

The ALJ's rationale for according more weight to Dr. Morgan's non-examining opinion than Dr. Cote's opinion is adequately articulated and consistent with the medical evidence. The ALJ addressed Dr. Cote's opinion that Book could rarely lift less than 10 pounds or perform postural movements, explaining:

> This opinion is inconsistent with and unsupported by the objective medical record and the claimant's activities of daily living, including Dr. Cote's own records (B9F/3; B15F/3). The claimant has denied impairment related symptoms. The claimant's treatment providers noted the claimant's pain reduction. Furthermore, while the claimant has shown impairment related symptoms, her physical examination results have often been unremarkable (B6F; B9F; B13F; B14F; B15F; B16F). Therefore, this opinion is not persuasive.

(ECF No. 13, PageID.99).

The ALJ also cited Eric Lerche, D.O.'s May 2019 conclusion that Book could "return to full-weight bearing . . . without restrictions," finding that opinion partially persuasive. (*Id*., PageID.99, 722). The ALJ adopted Dr. Morgan's finding that Book could lift, carry, push, and/or pull 20 pounds occasionally and 10 frequently with the ability to stand/walk for four hours and sit for six in an eight-hour workday, noting that these findings were consistent with the treating records.

(*Id.*, PageID.98).  He declined to find Dr. Morgan's opinion wholly persuasive on the basis that while Dr. Morgan found that the visual condition caused significant work-related limitation, the more recent eye examinations showed normal vision. (*Id.*, PageID.94, 99).

Book argues further that under the § 404.1520c(c) factors, Dr. Cote's opinion is entitled to additional weight due to her treating relationship with Book, the length of treatment, and the frequency of examinations.  (ECF No. 17, PageID.866).  While these factors, standing alone, might tend to favor a treating source over a non-examining one, the regulation makes clear that despite the consideration given to those factors, "the *most important* factors [are] supportability and consistency."  § 1520c(b) (emphasis added).  As noted above, the ALJ provided adequate and well supported reasons for finding that Dr. Cote's opinion lacked supportability and consistency with the record as a whole.

Book's overlapping argument that Dr. Morgan's assessment did not have benefit of the later records is likewise not well taken.  To be sure, "updated" medical records as a rule are to be accorded more weight than older ones.  *See Brooks v. Comm'r of Soc. Sec.*, 531 F. App'x 636, 642 (6th Cir. 2013) (ALJ's adoption of non-examining source's earlier opinion over the more recent examining findings grounds for remand); *see also Miller*, *supra,* 811 F.3d 825, 834 (6th Cir. 2016) (Error in adopting an earlier RFC that "could not account for

subsequent [treatment and] assessments."). However, the adoption of the older records over newer ones does not automatically constitute error. An ALJ is not barred from according greater weight to the older records provided that she gives some indication that she considered the more recent evidence. Courts "require 'some indication that the ALJ at least considered these new facts before giving greater weight to an opinion that is not based on a review of a complete case record.' " *Brooks*, 531 F. App'x at 642 (6th Cir. 2013) (*citing Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 409 (6th Cir. 2009) (internal citations omitted).

Book's argument that the ALJ erroneously relied on an "outdated" assessment fails for two reasons. First, Dr. Morgan's assessment was performed only 37 days before Dr. Cote's. Book does not explain how her condition changed between November 1, 2018 and December 7, 2018, and the undersigned's review of the records for that period does not contradict Dr. Morgan's findings. Second, the ALJ in fact discussed the treating records post-dating both Dr. Morgan's and Dr. Cote's opinion by several months. (ECF No. 13, PageID.94-100). There is no basis to conclude that Dr. Morgan's findings were invalidated by the later clinical evidence showing that her physical condition either remained stable or improved. (*Id*., PageID.770).

For these reasons, the ALJ's conclusions regarding the weight and persuasiveness of the medical opinions should remain undisturbed.

### B.    Substantial Evidence

Book also argues that the ALJ's decision is not supported by substantial evidence and that the ALJ engaged in "rampant cherry-picking" of the record to support the non-disability determination while ignoring the evidence pointing to a disability finding.  (ECF No. 15, PageID.834).  The Commissioner disputes that the determination is not supported, citing Dr. Morgan's findings as well as the subsequent records supporting the RFC for a range of light work.  (ECF No. 16, PageID.853).

Book's "cherry-picking" argument, in effect, is that the ALJ impermissibly relied on isolated portions of the record supporting the non-disability finding while ignoring the great weight of evidence supporting the opposite conclusion.  However, she provides no citation to the medical transcript to support her allegations chronic physical limitations, ongoing urinary incontinence, and eye problems.  (ECF No. 15, PageID.834-837).

The transcript amply supports the RFC crafted by the ALJ. As to the eye conditions, August 2020 exam records showed 20/20 vision with correction.  (ECF No. 13, PageID.372).  The ALJ did not err by finding that the eye conditions did not cause significant work-related impairment.  While Book reported urinary tract/bladder problems, the later records do not support her argument that the condition caused chronic incontinence or required restricted job duties, but rather,

showed that symptoms had resolved within the month. (*Id.*, PageID.653). March 2018 records show full muscle strength. (*Id.*, PageID.355). Two months later, Book reported improvements in fatigue with medication and showed full muscle strength. (*Id.*, PageID.359, 391, 395). July 2018 records show a full range of lower extremity motion with 4/5 strength in the right lower extremity. (*Id.*, PageID.509). While January 2019 records predating the right Achilles tendon surgery show tenderness and swelling (*Id.*, PageID.712), post-operative records created from March through May 2019 note no ankle pain and an increased range of motion. (*Id.*, PageID.770-772). While Book complained of ongoing fatigue to her treating sources, these reports, by themselves do not support her claims. *See McCready v. Comm'r of Soc. Sec.,* No. 10-13893, 2012 WL 1060088, at *8 (E.D. Mich. Mar. 2, 2012), *report and recommendation adopted*, 2012 WL 1059747 (E.D. Mich. Mar. 29, 2012) (Subjective reports memorialized in the treating records "are not opinions regarding plaintiff's limitations or restrictions"). Thus, the ALJ did not err in rejected the unsubstantiated allegations of limitation.

Finally, even assuming that Book could show that she was incapable of a limited range of light work, the VE identified a significant number of jobs that could be performed at the sedentary level involving "lifting no more than 10 pounds at a time and occasionally lifting or carrying" and only occasional walking/standing. (ECF No. 13, PageID.102, 136); § 404.1567(a). Book has not

argued, much less shown that she is incapable of performing the alternative RFC for a limited range of sedentary work.

### C.    In Sum

While Book experiences some degree of limitation, the ALJ accounted for her impairments in determining that she could perform a range of exertionally light work.  Further, the ALJ's finding that Book is capable of work is substantially supported by the record.  Because the non-disability determination was adequately explained and well within the "zone of choice" accorded to the fact-finder at the administrative hearing level, it will not be disturbed by this Court. *Blakley, supra,* 581 F.3d at 406.

### VI.    Conclusion

For the reasons set forth above, the Commissioner's motion (ECF No. 16) is GRANTED, Book's motion (ECF No. 15) is DENIED, and the Commissioner's decision is AFFIRMED.

SO ORDERED.

Dated:   April 25, 2022                              s/Kimberly G. Altman
Detroit, Michigan                                    KIMBERLY G. ALTMAN
                                                     United States Magistrate Judge

## <u>CERTIFICATE OF SERVICE</u>

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on April 25, 2022.

<u>s/Carolyn Ciesla</u>
CAROLYN CIESLA
Case Manager